J. S71005/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANDREW JAMES MILLER, | : | No. 1624 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 8, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0014034-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 19, 2016**

Andrew James Miller appeals the judgment of sentence of
September 8, 2014, following his convictions of invasion of privacy and
criminal attempt, invasion of privacy.[1]  We affirm.

The trial court recited the following facts:

> This matter arises out of [appellant's] arrest
> for taking or attempting to take photographs, using
> his cell phone, up the skirt of a woman in a
> supermarket and several other women at his place of
> work.  [Appellant] filed a Motion to Suppress
> evidence obtained from his cell phone alleging that
> the search warrant authorizing the seizure of his cell
> phone, on which various pictures and videos were
> found, was not supported by probable cause.  In
> addition, [appellant] alleged that the warrant lacked
> the required specificity describing the phone to be
> searched and seized.

---

[1] 18 Pa.C.S.A. §§ 7507.1 and 901, respectively.

The search warrant application of May 29, 2013 alleged that on Wednesday, May 22, 2013 the victim reported that while she was shopping at a grocery store "a male followed her and on three occasions he was in such position, crouched down, to take a photograph up her skirt with his cell phone." The warrant further alleged that in a personal interview with the victim on May 24, 2013, she described the following occurring in the supermarket over a 30 to 40 minute period:

> While inside she noted the male seemed to be following her. She first noticed the male while in the isle [sic] where pasta products were. She did not know or recognize the male. She described him as being "really tall." The male "invaded her space" a total of three times. She expounded by explaining the male came unusually close to her when she would stop or look for items on the shelf. The third incident was the most egregious. (She) recalled being in the cereal aisle. She stopped to look at an item on the shelf. She was standing facing the shelf when she sensed someone close to her. She immediately reacted by moving. When she did, her left foot bumped the right hand of the male. This indicated that the male's right hand was close to the floor and directly behind her foot. She was startled and quickly walked away from the area. She looked back and saw the male crouched down, facing the shelf. His cell phone was in his right hand resting on his thigh. She believed the male may have taken a picture up her skirt with his cell phone. It should be noted that (the victim) was wearing a short skirt at the time. If the male took a photograph from where his hand was, [it] would be conceivable that her buttocks, genital and pubic area would have been captured in the photo.

The search warrant further described that the victim then went to a self checkout lane and [appellant] got in line behind her even though other lanes were open and available. An employee advised [appellant] that other lanes were available, but he indicated that he wanted to remain in that lane, but eventually moved to another lane. Later, she saw [appellant] standing in the lobby area and he then reentered the store. The victim had an employee of the store escort her to her vehicle to load her groceries and as she completed loading the groceries she saw [appellant] sitting in a vehicle two spaces away from her. She then noted that [appellant's] vehicle was following her as she proceeded through the parking lot to the exit. At the exit she waited until approaching cars were so close before she pulled out so that [appellant's] vehicle would not be able to pull out directly behind her.

Detective Brace's affidavit indicated that he reviewed surveillance footage from the supermarket which showed the victim at the checkout counter as she described and [appellant] following her to the same lane, standing behind her. The affidavit further states "it appears the male is holding something in his right hand (presumably his cell phone)." The affidavit further sets forth Detective Brace's review of additional footage from the supermarket surveillance video which was consistent with the victim's description of [appellant] following her to the checkout lane and also describes him being seen in the lobby "manipulating his cell phone in his hands while waiting." The affidavit requests a warrant to search the "cell phone used by [appellant] while at Giant Eagle at Moon Township on May 21, 2013."

The search warrant was issued and executed on [appellant] at his residence on May 29, 2013 where his phone was seized and examined. There were no videos or images of the woman in the supermarket, however, several videos were found showing other females' genital areas which were

> recorded at [appellant's] place of employment. Further investigation, including review of surveillance video from [appellant's] place of employment, revealed six different occasions when [appellant] could be observed putting himself in a position where he could record co-employees' intimate parts by placing his cellular phone under their skirts.

Trial court opinion, 7/7/15 at 2-4.

Appellant was convicted of the aforementioned charges following a non-jury trial on June 10, 2014. On September 8, 2014, the trial court sentenced appellant to an aggregate of seven years' probation, and appellant was also ordered to register under SORNA for 15 years. Appellant filed notice of appeal on October 3, 2014. On October 8, 2014, the trial court ordered appellant to produce a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant complied on December 18, 2014. The trial court has filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

> Did the lower court err in denying the motion to suppress insofar as the search warrant used to obtain the appellant's cell phone, and ultimately, the photographic/video evidence, was not supported by probable cause when solely considering the four corners of the affidavit of probable cause?

Appellant's brief at 5.

When reviewing the denial of a defendant's motion to suppress evidence, we are held to the following standard:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-527 (Pa.Super. 2015), quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 562 U.S. 832 (2010) (internal citations and quotation marks omitted).

Both the United States and Pennsylvania Constitutions guarantee that individuals shall not be subject to general investigative search warrants lacking in probable cause and specificity of the items to be searched. *See Commonwealth v. Rega*, 933 A.2d 997, 1011 (Pa. 2007), *cert. denied*, 562 U.S. 832 (2010).

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

> Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8.

A recent decision of this court explained our standard for determining whether probable cause exists:

> With regard to the somewhat elusive concept of probable cause, we have explained as follows:

>> "[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" ***Commonwealth v. Wright***, 867 A.2d 1265, 1268 (Pa.Super. 2005) (quoting ***Commonwealth v. Romero***, 449 Pa.Super. 194, 673 A.2d 374, 376 (Pa.Super. 1996)). "It is only the probability and not a prima facie showing of criminal activity that is a standard of probable cause." ***Commonwealth v. Monaghan***, 295 Pa.Super. 450, 441 A.2d 1318 (Pa.Super. 1982) (citation omitted); ***see also Illinois v. Gates***, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); ***Commonwealth v.***

> ***Lindblom***, 854 A.2d 604, 607
> (Pa.Super. 2004) (reciting that probable
> cause exists when criminality is one
> reasonable inference, not necessarily
> even the most likely inference). To this
> point on the quanta of evidence
> necessary to establish probable cause,
> the United States Supreme Court
> recently noted that "[f]inely tuned
> standards such as proof beyond a
> reasonable doubt or by a preponderance
> of the evidence, useful in formal trials,
> have no place in the probable cause
> decision." ***Maryland v. Pringle***, 540
> U.S. 366, 371, 124 S.Ct. 795, 157
> L.Ed.2d 769 (2003) (citations omitted).

***Commonwealth v. Freeman***, 2015 WL 7756864 at *7 (Pa.Super. December 2, 2015), quoting ***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa.Super. 2005), ***appeal denied***, 920 A.2d 831 (Pa. 2007) (citations modified). When determining whether probable cause exists, we must consider the totality of the circumstances. ***Commonwealth v. Wallace***, 42 A.3d 1040, 1048 (Pa. 2012), quoting ***Commonwealth v. Coleman***, 830 A.2d 554, 560 (Pa. 2003) (citations omitted).

Here, the police produced sufficient probable cause to justify the issuance of a search warrant for appellant's cell phone. According to the search warrant application, the victim "noticed a male seemed to be following her." (Affidavit of probable cause, 5/29/13 at 3.) The victim told the police that appellant got "unusually close to her," three times while inside the Moon Township Giant Eagle. (***Id.***) As indicated ***supra***, the victim, after quickly walking away from appellant after their third encounter

inside the store, noticed that appellant was, "crouched down, facing the shelf. His cell phone was in his right hand resting on his thigh. She believed [appellant] may have taken a picture up her skirt with his cell phone." (*Id.*) The affidavit also indicated that at the time of the third encounter between appellant and the victim, appellant's left hand was close to the floor and directly behind the victim's left foot; the affidavit also notes that the victim was wearing a short skirt at the time. (*Id.*)

Given the totality of the circumstances surrounding the multiple encounters between appellant and the victim inside the Giant Eagle, the police have established that one could "reasonably infer" that a criminal act took place, pursuant to *Lindblom*. Therefore, appellant's argument that the police lacked sufficient probable cause to justify issuing a search warrant for his cell phone must fail.

Appellant also makes the argument that the search warrant was overbroad. The Pennsylvania Rules of Appellate Procedure require an appellant to raise an issue with the lower court before raising it on appeal. Pa.R.A.P. 302(a). Failure to do so will result in the issue being waived. Here, appellant avers that the search warrant, which included "any and all electronically stored data, and/or multimedia phone and related storage media," was overbroad. A careful review of the suppression hearing and trial transcripts and appellant's omnibus pretrial motion reveal that appellant

failed to raise this issue with the trial court. The issue is therefore waived, and we cannot consider its merits.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2016